UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARIA GONZALEZ FERRO, ALEXANDRA
CATTARUZZA, MARA OLIVA, SILVANA
BONIL, CATALINA ANGEL, LUMA RIVERA,
MARIA PAZ CUEVAS, MARCIA ZORRILLA,
EULALIA PEREZ, DANIEL CRIADO, ERIC
LOSADA, RICARDO VACCA, and HEYDI DE
LA CRUZ on their own behalf and on behalf of a
class similarly situated,

                     Plaintiffs,                            13 Civ. 2347 (PKC)

          -against-                                  MEMORANDUM
                                                     AND ORDER

METROPOLITAN CENTER FOR MENTAL
HEALTH, ANDREW PARDO, GENE YELLIN,
DAVID BELGRAY, RUBY BENJAMIN,
JOSEPHINE DIAZ, TERESA GOUDIE,
YVETTE JANSSEN, HOWARD KATZ, BETH
RABINOVE, SHARLENE BIRD and JUSTIN
STERN,

                    Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Plaintiffs Maria Gonzalez Ferro, Alexandra Cattaruzza, Mara Oliva, Silvana

Bonil, Catalina Angel, Luma Rivera, Maria Paz Cuevas, Marcia Zorrilla, Eulalia Perez, Daniel

Criado, Eric Losada, Ricardo Vacca, and Heydi de la Cruz bring this putative class action against

defendants Metropolitan Center for Mental Health, its executive director, Andrew Pardo, and

directors Gene Yellin, David Belgray, Ruby Benjamin, Josephine Diaz, Teresa Goudi, Yvette

Janssen, Howard Katz, Beth Rabinove, Sharlene Bird, and Justin Stern (collectively, "MCMH")

alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1964(c), the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 3111, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B).

Plaintiffs allege that MCMH has engaged in a pattern of employing foreign workers as full-time employees, but internally classifying them as independent contractors in order to avoid paying taxes and providing employee benefits. MCMH now moves to dismiss all claims for failure to state a claim pursuant to Rule 12(b)(6), Fed. R. Civ. P. (Docket # 13.)

The Court concludes that the First Amended Complaint (Docket # 10) fails to state a claim under RICO or FICA, but does state a claim under ERISA against the Metropolitan Center for Mental Health. For reasons further explained, MCMH's motion is granted with respect to plaintiffs' claims under RICO and FICA. MCMH's motion to dismiss is granted with respect to plaintiffs' claims under ERISA against defendants Pardo, Yellin, Belgray, Benjamin, Diaz, Goudie, Janssen, Katz, Rabinove, Bird, and Stern, and denied with respect to plaintiffs' claims under ERISA against defendant Metropolitan Center for Mental Health.

## BACKGROUND

The following facts are taken from the First Amended Complaint (the "FAC"), and matters of which judicial notice may appropriately be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002). All facts are assumed to be true for the purpose of deciding defendants' motion to dismiss. All reasonable inferences are drawn in favor of the plaintiffs as non-movants. See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam).

Plaintiffs are foreign-educated mental health therapists who are or were employed by MCMH between 1998 and 2012. (First Am. Compl. ("FAC") ¶ 9.) Defendant Metropolitan Center for Mental Health is a not-for-profit corporation incorporated in New York with its principal place of business in Manhattan. (Id. ¶ 4.) It functions as a licensed psychiatric clinic

under the supervision of the New York State Department of Health. (Id.) At all relevant times, defendant Andrew Pardo was employed as its Executive Director, and the other named defendants were members of the Board of Directors. (Id. ¶¶ 5–6.)

In order to hire plaintiffs, MCMH sponsored their immigration and represented, by mail, to the United States Immigration and Naturalization Service (the "INS") that they would be hired as salaried employees. (Id. ¶¶ 3, 12.) After being hired, plaintiffs were treated no differently than other full-time employees. (Id. ¶ 9.) MCMH controlled most aspects of their work, including, inter alia, their hours, their clients, their offices, and their attire. (Id.)

Despite their treatment as full-time employees, plaintiffs were classified as "independent contractors" in MCMH's filings with the Internal Revenue Service (the "IRS"), the New York State Department of Labor, and the New York State Income Tax Department. (Id. ¶ 11.) As a consequence of this classification, plaintiffs were responsible for paying their own Social Security tax payments, were not given access to employee benefits plans maintained by MCMH, such as health and retirement, and were not provided other employee benefits described in MCMH's "Personnel Policies and Procedures Manual," including overtime pay, vacation time, or sick leave. (Id. ¶¶ 10, 19.)

Plaintiffs allege that each mailing to the INS regarding a plaintiff's future employment with MCMH constituted an instance of mail fraud. (Id. ¶ 14.) Plaintiffs further allege that when all the mailings are taken as a whole, they constitute a pattern of racketeering activity causing the loss of plaintiffs' beneficial working conditions in violation of RICO, 18 U.S.C. § 1964(c). (Id. ¶ 15–17, ¶ 24.)[1] Plaintiffs also allege that, due to their misclassification,

---

[1] The fifth and final cause of action in the FAC states, in its entirety, that "[b]y acting as aforedescribed and committing fraud in order to bring plaintiffs to the United States, defendants acted fraudulently, and violated 18

they were required to pay the full Social Security tax on their earnings and MCMH did not pay the employer's share of taxes in violation of is duties under FICA, 26 U.S.C. § 3111. (Id. ¶¶ 18–19.) Finally, plaintiffs allege that, due to their misclassification, they did not receive employee benefits, or employee retirement benefits, which MCMH provided to other full-time employees and seek relief under ERISA, 29 U.S.C. § 1132(a)(1)(B). (Id. ¶¶ 20–23.)

This Court has jurisdiction because federal questions are presented. 28 U.S.C. § 1331.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain . . . sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See Elevator Antitrust Litig., 502 F.3d at 50. Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

The Supreme Court has stated that "RICO is to be read broadly," because of both "Congress's self-consciously expansive language and overall approach" and the statute's "express admonition that RICO is to be liberally construed to effectuate its remedial purposes." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 497–98 (1985) (internal citations and quotation marks omitted). Notwithstanding this interpretive directive, because the "mere

---

U.S.C. § 1964(c), to plaintiffs' injury." (FAC ¶ 24.) The Court interprets this claim to be identical to the FAC's earlier RICO claim. (See id. ¶¶ 15–17.)

assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting Figueroa Ruiz v. Alegria, 896 F.2d 645, 650 (1st Cir. 1990)), aff'd sub nom. Katzman v. Victoria's Secret Catalogue, Div. of The Ltd., Inc., 113 F.3d 1229 (2d Cir. 1997).

In addition to the pleading requirements of Rule 12(b)(6), a complaint alleging fraud must satisfy the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P., that requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Requiring particularity serves to give a defendant notice of the plaintiff's claim and safeguards a defendant's reputation from "improvident" charges. See ATSI Comm., Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). To satisfy this pleading threshold, the complaint must "'(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir. 2000) (quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting Chambers, 282 F.3d at 152–53)). "[A]

plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." Chambers, 282 F.3d at 153. "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." DiFolco, 622 F.3d at 111 (internal quotation marks and citation omitted).

DISCUSSION

I.   MCMH's Motion to Dismiss Plaintiffs' Claims under RICO Is Granted.

Plaintiffs allege that, in order to secure their services, MCMH represented to the INS that they would be salaried employees. According to the FAC, these communications were fraudulent because plaintiffs were classified as independent contractors, rather than full-time employees. (FAC ¶¶ 11–12.) plaintiffs further allege that these allegedly fraudulent mailings to the INS constitute a "pattern of racketeering activity" in violation of RICO.

RICO provides a private cause of action to any person injured by a criminal RICO violation. Hemi Grp., LLC v. City of New York, 559 U.S. 1, 5 (2010) (citing 18 U.S.C. § 1964(c)). Under section 1962(c) of RICO's criminal provisions, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "'Racketeering activity' is defined to include a number of so-called predicate acts," including mail fraud. Hemi Grp., LLC, 559 U.S. at 6 (citing 18 U.S.C. § 1961(1)).

In order to state a RICO "participation" claim, a plaintiff must adequately "allege the existence of seven constituent elements: (1) that the defendant (2) through the commission of

- 6 -

two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly

. . . participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign

commerce. Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983) (citing 18 U.S.C.

§ 1962). In addition, a civil RICO plaintiff must demonstrate that he or she "was injured in his

business or property by reason of a violation of section 1962." Id. (emphasis in original) (citing

18 U.S.C. § 1964(c)).

The Court assumes, without deciding, that MCMH's allegedly fraudulent

mailings to the INS are sufficiently pleaded to constitute a pattern of racketeering activity

sufficient for RICO liability.

The RICO statute defines an "enterprise" as "any individual, partnership,

corporation, association, or other legal entity, and any . . . group of individuals associated in fact

although not a legal entity." 18 U.S.C. § 1961(4). In order to sufficiently allege the existence of

an enterprise, a party must plead "the existence of two distinct entities: (1) a "person"; and (2) an

"enterprise" that is not simply the same "person" referred to by a different name." Cedric

Kushner Promotions, Inc. v. King, 533 U.S. 158, 161 (2001). "[B]y virtue of the distinctness

requirement, a corporate entity may not be both the RICO person and the RICO enterprise under

section 1962(c)." Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339,

344 (2d Cir. 1994). Because a corporation may only function through the actions of its

employees and agents, a corporation's employees, together with the corporation, do not form an

enterprise distinct from the corporation itself. Id.

The FAC alleges that the Metropolitan Center for Mental Health is an enterprise

under RICO and the other named defendants conducted its affairs. (See FAC ¶ 17.) However,

the Metropolitan Center for Mental Health is also joined as a defendant. As such, the FAC does

not allege an enterprise distinct from the defendants under RICO and plaintiffs' claim must be dismissed.

Had the Metropolitan Center for Mental Health not been joined as a defendant, and merely been alleged as an enterprise under RICO, the distinctness requirement would have been met, as corporate employees and directors are legally distinct from a corporation and have a different legal status. See Cedric Kushner Promotions, Inc., 533 U.S. at 163–64. Because the defect in the pleading may be corrected through amendment, see Rule 15, Fed. R. Civ. P., in the interests of judicial economy, the Court addresses whether plaintiffs' RICO claim states a claim for relief apart from this deficiency.

In order to recover under RICO, a plaintiff's injuries must have been proximately caused by the defendant's conduct. Hemi Grp., LLC 559 U.S. at 9. Thus, "the compensable injury flowing from a violation of [section 1962(c)] 'necessarily is the harm caused by predicate acts sufficiently related to constitute a pattern, for the essence of the violation is the commission of those acts in connection with the conduct of an enterprise.'" Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 457 (2006) (quoting Sedima, S.P.R.L., 473 U.S. at 497).

According to plaintiffs, MCMH's allegedly fraudulent mailings to the INS caused their ultimate harm. (FAC ¶¶ 14–16, 24.) The FAC does not explain how these communications harmed plaintiffs. The FAC only alleges that the communications were made in order to secure plaintiffs' services. (See id. ¶ 12.) For MCMH's allegedly fraudulent statements to have caused plaintiffs' harm, it must be plausible that the misrepresentations caused plaintiffs' presence in the United States, which, in turn, caused them to be classified by MCMH as independent contractors, which caused the loss of wages and benefits. Though it is plausible that absent MCMH's representations, plaintiffs would not have gained entry to the United States, it does not

necessarily follow that their mere presence here caused their alleged ultimate harm, namely their loss of wages and benefits. The Court concludes that plaintiffs' alleged harm is too attenuated from the alleged fraud to have been proximately caused by it.

As such, the Court concludes that the FAC fails to plausibly allege that plaintiffs' alleged harm was proximately caused by MCMH's statements to the INS.

II. <u>MCMH's Motion to Dismiss Plaintiff's Claims under FICA Is Granted.</u>

Plaintiffs allege that they paid excess Social Security tax on their earnings because MCMH did not pay its required share under the FICA provisions of the Internal Revenue Code (the "IRC"), 26 U.S.C. § 3111. Though plaintiffs invoke the IRC as providing a basis for their claim, the IRC does not explicitly create a private cause of action whereby an employee may sue an employer for a failure to make a required contribution. <u>Spilky v. Helphand</u>, No. 91 CIV. 3045 (PKL), 1993 WL 159944, at *2 (S.D.N.Y. May 11, 1993).

When a private cause of action does not appear on the face of a statute, one may be implied when (1) the plaintiff is one of a class for whose benefit the statute was enacted, (2) there is an indication of legislative intent to either provide or deny one, (3) a private right of action would be consistent with the "underlying purpose of the legislative scheme," and (4) the cause of action is not one traditionally relegated to state law. <u>Lindsay v. Ass'n of Prof'l Flight Attendants</u>, 581 F.3d 47, 52 (2d Cir. 2009) (quoting <u>Cort v. Ash</u>, 422 U.S. 66, 78 (1975)).

The Second Circuit has not decided whether an implied cause of action exists under the IRC, though, finding that the tax provisions were enacted for the benefit of the federal government as a revenue collection measure, and finding no legislative intent to create one, courts in this District have consistently held that there is no private cause of action for alleged violations. <u>Reynolds v. de Silva</u>, No. 09 Civ. 9218(CM), 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24, 2010) (collecting cases); <u>Spilky</u>, 1993 WL 159944, at *3–4.

The Court agrees that FICA was enacted for the benefit of the federal government. Under the Social Security Act, taxes collected through FICA must be used to fund Social Security. 42 U.S.C. § 911. Thus, FICA was enacted to facilitate the government's funding of Social Security, and not for the benefit of the program's beneficiaries. See Spilky, 1993 WL 149944, at *3–4; see also McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718, 724 (11th Cir. 2002). Furthermore, there is no indication, either in the statutory text or the legislative history, that Congress intended for there to be a private cause of action under FICA. Spilky, 1993 WL 149944, at *4; DiGiovanni v. City of Rochester, 680 F. Supp. 80, 83 (W.D.N.Y. 1988); see also McDonald, 291 F.3d at 724.

Therefore, the Court concludes there is no private cause of action under FICA and plaintiffs' claims must be dismissed.

### III. MCMH's Motion to Dismiss Plaintiff's Claims under ERISA Is Denied.

Plaintiffs allege that, because they were incorrectly classified as independent contractors, MCMH did not provide them with benefits that it provided to other employees and seek relief under ERISA.

"ERISA's central purpose is to protect beneficiaries of employee benefit plans." In re Citigroup ERISA Litig., 662 F.3d 128, 135 (2d Cir. 2011) (internal quotation marks and citation omitted). Under ERISA, a participant or beneficiary may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). To sustain an ERISA claim, a plaintiff must allege (1) that he or she was an employee, and (2) eligible to receive a benefit under a plan. See Karagozian v. Coty US, LLC, No. 10 Civ. 5482(RMB), 2011 WL 536423, at *3 (S.D.N.Y. Feb. 10, 2011); Cannon v.

Douglas Elliman, LLC, No. 06 Civ. 7092(NRB), 2007 WL 4358456, at *7 (S.D.N.Y. Dec. 10, 2007).

Plaintiffs have alleged both that they were employees at MCMH, and, but for their misclassification, would have received benefits as described in MCMH's "Personnel Policies and Procedures Manual." (FAC ¶¶ 9–10.)

MCMH argues that plaintiffs' ERISA claims should be dismissed because (1) they did not exhaust ERISA's administrative remedies, (2) the statute of limitations bars recovery for some individual plaintiffs, and (3) they failed to name the employee benefit plan as a defendant and failed to allege that any defendants were trustees or administrators of the plan.

Failure to exhaust administrative remedies and statute of limitations are affirmative defenses, and neither party has submitted the benefits plan at issue. See Rule 8(c), Fed. R. Civ. P.; Pease v. Harford Life & Accident Ins. Co., 449 F.3d 435, 446 (2d Cir. 2006). Each argument raised by MCMH potentially requires consideration of facts outside the FAC and parties' submissions. In general, when a defense requires consideration of facts outside of the complaint, it is inappropriate to consider it on a motion to dismiss, unless "the facts necessary to establish the defense are evident on the face of the complaint." See Kelly-Brown v. Winfrey, 717 F.3d 295, 308 (2d Cir. 2013).

First, there is a "firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." Pease, 449 F.3d at 443 (internal quotation marks and citation omitted). Because failure to exhaust is an affirmative defense, MCMH, as its proponent, has the burden of proof. Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 72 (2d Cir. 2012) (citing Sarl Louis Feraud Int'l v. Viewfinder, Inc., 489 F.3d 474, 484

n.7 (2d Cir. 2007)).  Consequently, there is no requirement that a plaintiff plead exhaustion in a

complaint under ERISA.  See Grullon v. City of New Haven, 720 F.3d 133, 141 (2d Cir. 2013).

Here, the FAC is silent as to whether plaintiffs exhausted their administrative

remedies.  (See FAC ¶¶ 10, 20–23.)  As such, it may not be said that the affirmative defense of

failure to exhaust appears on the face of the complaint and the Court will not consider it at this

time.

Second, in actions brought in this District under section 1132(a)(1)(B) of ERISA,

the statute of limitations is six years from the time there has been a repudiation by a defendant

which is clear and a plan beneficiary has actual or constructive knowledge of it.  Carey v. Int'l

Bhd. of Elec. Workers Local 363 Pension Plan, 201 F.3d 44, 48 (2d Cir. 1999); Miles v. N.Y.

State Teamsters Conference Pension & Ret. Fund Emp. Pension Benefit Plan, 698 F.2d 593, 598

(2d Cir. 1983).  Thus, a claim will accrue when a plaintiff "discovers, or with due diligence

should have discovered, the injury that is the basis of the litigation."  Carey, 201 F.3d at 48

(internal quotation marks and citation omitted).

MCMH argues that plaintiffs' claims accrued at the time of their hire and alleged

misclassification as independent contractors.  According to the FAC, plaintiffs were classified as

independent contractors at all times until 2012, though they were treated as full-time employees.

(FAC ¶¶ 9–10.)  The FAC makes no mention of whether plaintiffs knew of their alleged

eligibility for any employee benefit plan.  (See id.)  Further, the FAC alleges that plaintiffs were

foreign nationals who MCMH brought to the United States.  (Id. ¶ 12.)  Based on the facts

alleged, it is plausible that plaintiffs, as foreigners, would have no reason to either investigate, or

know of, MCMH's employee benefit plans.  Cf. Schultz v. Texaco Inc., 127 F. Supp. 2d 443,

448 (S.D.N.Y. 2001) (finding plaintiffs should have been aware of a change in status, and

corresponding loss of benefits, when the source of their paychecks changed). Consequently, absent additional information, the Court cannot determine when plaintiffs reasonably should have been aware of their claims and whether the claims are timely.

Finally, "'[i]n a recovery of benefits claim, only the plan and the administrators and trustees of the plan in their capacity as such may be held liable.'" Crocco v. Xerox Corp., 137 F.3d 105, 107 (2d Cir. 1998) (quoting Leonelli v. Pennwalt Corp., 887 F.2d 1195, 1199 (2d Cir. 1989)). ERISA defines an "administrator" as "(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor, or; (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe." 28 U.S.C. § 1002(16)(A). In the case of a plan maintained by a single employer, a "plan sponsor" is defined as the "employer." 28 U.S.C. § 1002(16)(B)(i). "The term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 28 U.S.C. § 1002(5).

No party has submitted any documentation regarding MCMH's employee benefits plan or the plan administrators, and no information regarding the plan or its administrators appears in the FAC, which describes the plan as being "maintained" by the Metropolitan Center for Mental Health. (See FAC ¶ 22.)

Absent any information to the contrary, it is plausible that, as an employer, the Metropolitan Center for Mental Health acted as the plan administrator and sponsor. However, the other named defendants are not alleged to have acted "in relation to an employee benefit plan" and are merely alleged to be directors and officers. (See id. ¶¶ 5–6.) Individuals may not be liable for corporate ERISA obligations solely by virtue of their status as directors or officers

- 13 -

of a corporation.  <u>Sasso v. Cervoni</u>, 985 F.2d 49, 50 (2d Cir. 1993).  Without any information

alleged regarding an individual's relationship with a benefit plan, the FAC does not plausibly

allege that the other named defendants were plan administrators.

Accordingly, the Court concludes that the FAC plausibly alleges claims under

ERISA against the Metropolitan Center for Mental Health, but not the other named defendants.

CONCLUSION

For the foregoing reasons, MCMH's motion to dismiss (Docket # 13) is

GRANTED with respect to plaintiffs' claims under RICO and FICA.  MCMH's motion to

dismiss is GRANTED with respect to plaintiffs' claims under ERISA against defendants Pardo,

Yellin, Belgray, Benjamin, Diaz, Goudie, Janssen, Katz, Rabinove, Bird, and Stern, and

DENIED with respect to plaintiffs' claims under ERISA against defendant Metropolitan Center

for Mental Health.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       March 26, 2014

- 14 -